

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
12/21/2020

| | | |
|---|---|---|
| **IN RE:** | § | |
| **ARNOLD B BAKER; dba ABBAKER EN-** | § | **CASE NO: 20-33465** |
| **TERPRISES, LLC; dba AR-** | § | |
| **NOLDBBAKER, LLC** | § | |
| **Debtor** | § | |
| | § | **CHAPTER 11** |

## MEMORANDUM OPINION

There are limited instances where courts afford debtors a metaphorical "get out of jail free" card. This Memorandum Opinion determines whether circumstances exist in which the instant debtor should not justly be held accountable for failure to file a plan of reorganization within an established deadline where under chapter 11, subchapter V, only the debtor may file a plan. On December 8, 2020, the Court conducted a hearing on debtor's second request to extend the deadline to file a plan of reorganization.

For the reasons set forth herein, this Court finds that the need for an extension to file a plan beyond the November 23, 2020 deadline is attributable to circumstances for which the debtor should not justly be held accountable. The debtor shall have until December 28, 2020 to file corrective Schedules D and E/F, properly setting forth the amount of debt for each creditor. This Court previously issued an order establishing the deadline for the filing of governmental proofs of claim as January 4, 2021.[1] Thus, the debtor shall have until January 18, 2021 to file a plan of reorganization.

## I.   FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 9014 and Rule 7052, which incorporates Federal Rule of Civ-

---

[1] ECF No. 50.

il Procedure 52.  To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such.  To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such.  This Court made certain oral findings and conclusions on the record.  This Memorandum Opinion supplements those findings and conclusions.  If there is an inconsistency, this Memorandum Opinion controls.

On July 7, 2020, Arnold B. Baker ("*Debtor*") filed his initial petition under chapter 11, subchapter V, title 11 of the Code.[2]  More than half the amount of Debtor's secured debt is comprised of a single governmental tax obligation.[3]  On July 8, 2020, the notice of the First Meeting of Creditors was filed on the Court's docket setting November 9, 2020 as the deadline for the filing of all non-governmental proofs of claim ("*341 Notice*").[4]  Conspicuously missing, however, was the deadline for the filing of governmental proofs of claim that is routinely contained within a 341 Notice.

On August 12, 2020, and pursuant to 11 U.S.C. § 1188(a), this Court held a status conference and ordered Debtor to file a plan of reorganization, no later than October 5, 2020.[5]  On September 15, 2020, Debtor filed an expedited motion to extend the October 5, 2020 deadline to November 23, 2020, several days past the November 9, 2020 non-governmental proofs of claim bar date.[6]  Debtor requested an extension because of the $4,092,944.50 scheduled general unsecured debt, most of the amounts were listed as contingent, unliquidated, and disputed while other scheduled debt was listed as unknown.  For example, the City of New Orleans was listed as

---

[2] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (§) thereof refers to the corresponding section in 11 U.S.C.
[3] ECF No. 1.
[4] ECF No. 4.
[5] ECF No. 25.
[6] ECF No. 37.

"Unknown."[7]  The amount for David White was listed as $0, but Debtor checked the box labeled "Other" and noted that the amount could be $1,000,000 based on an arbitration claim.[8]  Southern Aggregates, LLC was listed as $0, but just like David White's claim, the "Other" box was checked listing an amount of $300,000 based on a litigation claim.[9]  WDD Investments, Inc. was listed as $0 based on a litigation claim.[10]  Wells Fargo Bank was scheduled twice and both claims were listed as "Unknown" noting that one claim could be for $45,000 and the other for $72,500.[11]  Finally, approximately $3,228,328.50 of the remaining debt was listed as contingent, unliquidated, and disputed.[12]  Counting the debt listed as "Other", but excluding the "Unknown" amount for the City of New Orleans, Debtor scheduled a total of $6,333,764.91 in debt.[13]

To promote an efficient and orderly administration of bankruptcy cases, it is important for debtors to be aware of all claims asserted against them.  As Rule 3003(c)(2) states, only creditors who were not scheduled or scheduled as disputed, contingent, or unliquidated must file claims.[14] Here, Debtor scheduled over $4 million of general unsecured debt as either unknown or contingent, unliquidated, and disputed.   The time for claimants to file these claims is set by the Court.[15]  The bar date in any bankruptcy case not only allows claimants to benefit by participating in the plan, but also benefits all parties-in-interest. Finally, a bar date fixed before confirmation not only makes it easier for everyone to calculate the relative recovery one can expect to receive under a given plan, it provides the debtor an opportunity to propose a feasible plan based on allowed claim amounts.

---

[7] ECF No. 1 at 24.
[8] *Id.* at 27.
[9] *Id.* at 30.
[10] *Id.* at 31.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] FED. R. BANKR. P. 3003(c).
[15] *Id.*

Accordingly, the September 15, 2020 motion was granted, giving Debtor until November 23, 2020, to file his plan.[16]   The bar date for the filing of non-governmental unit claims was November 9, 2020,[17] and as of that date, $6.2 million in proofs of claim have been timely filed. However, instead of filing a plan on November 23, 2020, as ordered by this Court, Debtor filed a single matter self-styled as "Expedited Motion for Entry of Order Fixing Claims Filing Date for Governmental Units as December 28, 2020 and Motion to Extend Time to File Subchapter V Chapter 11 Plan January 25, 2021" ("*Motion*").[18]

## II.  CONCLUSIONS OF LAW

### A.  Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11."  Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[19]  This court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), this proceeding contains only core matters.

This Court may only hear a case in which venue is proper.[20]  28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."  Debtor's principal residence is Houston, Texas, and his chapter 11 case is presently pending in this Court; therefore, venue of this proceeding is proper.

### B.  Constitutional Authority to Enter a Final Order

---

[16] ECF No. 38.
[17] ECF No. 4.
[18] ECF No. 44.
[19] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[20] 28 U.S.C. § 1408.

This Court has an independent duty to evaluate whether it has the constitutional authority to sign a final order.[21]  In *Stern,* which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."[22]  As indicated above, the pending matter before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).  The ruling in *Stern* was limited to the one specific type of core proceeding involved in that dispute, which is not implicated here.  Additionally, in *Stern,* the debtor filed a counterclaim based solely on state law.  Here, Debtor's Motion is based on 11 U.S.C. § 1189(b) of the United States Bankruptcy Code.  A similar provision does not exist under state law.  Accordingly, the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order here.[23]

### III. ANALYSIS

**A. Debtor's Bankruptcy Schedules**

As a preliminary matter, the aggregate noncontingent liquidated secured and unsecured debt limit of $2,725,625 as of the date of filing applies to the instant subchapter V case.[24]  However, under the Coronavirus Aid, Relief And Economic Securities Act, the aggregate debt limit is currently $7,500,000.00 effective as of March 25, 2020.[25]  Debtor scheduled $3,228,328.50 in

---

[21] *Stern v. Marshall*, 564 U.S. 462 (2011).  *But see Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938-39 (2015) (holding that parties may consent to jurisdiction on non-core matters).

[22] 564 U.S. at 503.

[23] *See, e.g., Badami v. Sears (In re AFY, Inc.),* 461 B.R. 541, 547–48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also Tanguy v. West (In re Davis)*, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' . . . . We decline to extend *Stern's* limited holding herein.") (citing *Stern*, 564 U.S. at 475, 503).

[24] 11 U.S.C. § 101(51D).

[25] *In re Pearl Resources LLC*, ---- B. R. ---- 2020 WL 5823303 (Bankr. S.D. Tex. 2020).  The increased debt limit sunsets on March 25, 2021.

debt as either disputed, contingent, or unliquidated out of a total debt load of $6,333,764.91. But, Debtor incorrectly filled out Schedules D and E/F by listing debt as $0 or "Unknown," but identifying a dollar amount under "Other."

A debtor's eligibility for Subchapter V relief must be determined based on the information contained within debtor's schedules on the petition date.[26] The "Other" box that Debtor improperly utilized is solely intended to describe the type—not the amount—of scheduled debt if that debt does not match one of the itemized descriptions. Debtor must file corrective Schedules D and E/F to properly reflect the amount of debt and utilize the check boxes as they were designed to be used.

### B. Plan Filing Deadline Pursuant to U.S.C. § 1189(b)

Section 1189 provides, "[t]he debtor shall file a plan not later than 90 days after the order for relief under this chapter, except that the court may extend the period if the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable."[27] As a preliminary matter, the 90-day statutory limit is not jurisdictional, meaning a court is not stripped of jurisdiction over the debtor's case on day 91 post-order for relief if the debtor has not yet filed a plan.[28] The Supreme Court has held that "[a] rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction. Other rules, even if important and mandatory, should not be given the jurisdictional band."[29]

Statutory filing deadlines are generally labeled as "quintessential claim-processing rules" and should not be treated as jurisdictional "[u]nless Congress has 'clearly state[d]' that a statuto-

---

[26] 11 U.S.C. § 101(51D).
[27] 11 U.S.C. § 1189(b).
[28] See id.; see also In re Raylyn AG, Inc., 72 B.R. 523, 524 (Bankr. S.D. Iowa 1987) ("The Court concludes that [failure to file within 90 days under § 1221] is not jurisdictional . . . .").
[29] Henderson v. Shinseki, 562 U.S. 428, 435 (2011).

ry limitation is jurisdictional."[30]   Nothing in § 1189(b) indicates that Congress intended the 90-day filing deadline to be jurisdictional.  The statute does not preclude extending the filing deadline, and in fact is explicitly permissive of such.[31]   If a debtor requires more than 90 days to file a plan, § 1189 grants courts the authority to extend that time period, so long as the debtor is not justly accountable for failing to meet the 90-day deadline.[32]   And, extending a subchapter V debtor's deadline to file a plan is likely not the type of exceptional case where "a century's worth of precedent and practice in American courts rank a time limit as jurisdictional."[33]

Although subchapter V falls under the umbrella of chapter 11, the language governing an extension under § 1189 is unlike § 1121,[34] but identical to § 1221 in chapter 12.[35]   Like subchapter V, chapter 12 bankruptcies are "intended to proceed on what can be characterized as a fast track."[36]   Therefore, cases discussing § 1221 provide guidance in determining under what circumstances a court should extend a plan filing deadline.[37]   Additionally, because neither the

---

[30] *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 146, 154 (2013) (internal citations omitted).

[31] 11 U.S.C. § 1189(b) (". . . except that the court *may* extend the period . . . .").

[32] *See id.*

[33] *Sebelius*, 568 U.S. at 155 (citing *Bowles v. Russell*, 551 U.S. 205, 217 (2007)).

[34] *See, e.g.*, 11 U.S.C. § 1121(e) ("In a small business case only the debtor may file a plan until 180 days after the date of the order for relief, unless that period is extended as provided by this subsection . . . . or the court, for cause, orders otherwise; . . . . In a small business case the plan and disclosure statement (if any) shall be filed not later than 300 days after the date of the order for relief . . . ."); *In re Shea, Ltd.*, 545 B.R. 529, 536–37 (Bankr. S.D. Tex. 2016) (holding that under § 1121(e), "in a small business case, the small business debtor has 180 days of exclusivity and 300 days before which to hit the 'drop dead date,' after which 'the' plan may no longer be filed."); *In re Express One Int'l*, 194 B.R. 98, 101 (Bankr. E.D. Tex. 1996) (finding that the exclusivity period pursuant to § 1121 should be filed, extending the time period for debtor exclusively to file a plan); *In re Simbaki, Ltd.*, 522 B.R. 917, 921 (Bankr. S.D. Tex. 2014) (holding that only a debtor is bound by the 300-day drop dead deadline and therefore, "only the debtor needs the ability to obtain an extension").

[35] *See* 11 U.S.C. § 1221 ("The debtor shall file a plan not later than 90 days after the order for relief under this chapter, except that the court may extend the period if the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable.").

[36] *In re Henderson*, 352 B.R. 439, 443 (Bankr. N.D. Tex. 2006).

[37] *See In re Trepetin*, 617 B.R. 841, 848 n.14 (Bankr. D. Md. July 7, 2020) ("Subchapter V and chapter 12 are not identical, and invoking chapter 12 standards may not be warranted in every instance . . . . Nevertheless, with respect to the 90-day filing deadline, not only does the same language appear in sections 1189(b) and 1221 but both processes also remove the absolute priority rule as a confirmation standard. This additional similarity between Subchapter V and chapter 12 further supports applying a consistent standard to a requested extension of the 90-day deadline for filing a Subchapter V or a chapter 12 plan.") (citation omitted).

Small Business Reorganization Act of 2019 ("*SBRA*")[38] or its legislative history set out when a subchapter V debtor should not justly be held accountable for failing to file a plan of reorganization within the prescribed deadline or the purpose or scope of § 1189(b),[39] the Court relies on the plain language of § 1189(b) and considers sources discussing or applying § 1221.

The plain language of the phrase "attributable to circumstances for which the debtor should not justly be held accountable" evinces a higher standard than the "for cause" standard set forth in both Federal Rule of Bankruptcy Procedure 9006(b) (governing extensions of time generally) and Bankruptcy Code § 1121(d)(1) (governing extensions of a non-subchapter V debtor's exclusivity period to file a chapter 11 plan).[40]  The legislative history of § 1221 confirms that finding.[41]  Moreover, the rationale behind the stricter standard is logical.  COLLIER's summarizes it this way: "the 90-day limitation was probably included in chapter 12 for the benefit of creditors rather than for the benefit of the debtor.  Because chapter 12 lacks the safeguards for creditors that are provided in chapter 11, the 90–day limitation . . . is [one of] the primary protection[s] for creditors against a debtor's languishing in chapter 12 without confirming a plan.  Thus,

---

[38] 11 U.S.C. §§ 1181–1195.

[39] H.R. REP. NO. 116-171 (2019).

[40] In a Subchapter V case, *only* the debtor may file a plan. 11 U.S.C. § 1189(a). In a traditional Chapter 11 case, the debtor initially has the exclusive right to file a plan, but that exclusive right may expire or be terminated; it may also be extended "for cause." *See* 11 U.S.C. § 1121.

[41] 139 CONG. REC. H1252 (daily ed. Mar. 16, 1993) (statement of Rep. Fish) (explaining that the replacement of "substantially justified" in § 1221 with "the need for an extension is attributable to circumstances for which the debtor should not justly be held accountable" was a "tightening of the current requirement that an extension by [sic] substantially justified [and] should prove helpful to creditors."); *see also* 8 COLLIER ON BANKRUPTCY ¶ 1221.01[2] (16th ed. 2020) ("The phrase 'substantially justified' was not explained in the legislative history, and so there was no guidance on how the phrase was to be interpreted. Presumably, Congress intended that the debtor be required to make a greater showing than was necessary to meet the 'cause' standard for extension of the debtor's exclusivity period in chapter 11 cases. In 1993, . . . Congress amended section 1221 by deleting the 'substantially justified' language and providing instead that an extension should be granted only if the need for an extension is 'attributable to circumstances for which the debtor should not justly be held accountable.' The legislative history makes clear that Congress intended by this change to make it more difficult for debtors to obtain extensions.").

it is appropriate that the debtor should be required to meet a stringent burden if the debtor seeks an extension of the 90-day period."[42]

The novelty of subchapter V means very few courts have analyzed and applied § 1189(b). Courts that have, have done so in the context of conversion from chapter 7 to chapter 11, sub-chapter V[43] or cases where debtors seek to take advantage of subchapter V even though their cases were filed prior to its effective date.[44] Neither scenario applies here. In this case, Debtor, who has always proceeded under subchapter V, seeks an extension of the plan filing deadline under § 1189(b).[45]

Courts interpreting the language used in §§ 1189 and 1221 have held that "the bankruptcy court may grant an extension only if the debtor's inability to file a timely plan is due to circum-stances beyond the debtor's control."[46] This Court also looks to the dictionary definitions of "justly" and "accountable" to assess the plain meaning of § 1189. "Justly" is defined as "[a]ccording to what is morally right or fair; fairly".[47] "Accountable" is defined as "required or expected to justify actions or decisions; responsible".[48] Thus, in determining whether to grant the extension, this Court considers whether the need for an extension is attributable to circum-

---

[42] 8 COLLIER ON BANKRUPTCY ¶ 1221.01[2] (16th ed. 2020).

[43] *See In re Trepetin*, 617 B.R. 841 (Bankr. D. Md. 2020).

[44] *See, e.g., In re Seven Stars on the Hudson Corp.*, 618 B.R. 333 (Bankr. S.D. Fla. 2020); *In re Ventura*, 615 B.R. 1 (Bankr. E.D.N.Y 2020); *In re Twin Pines, LLC*, 2020 Bankr. LEXIS 1217 (Bankr. D. N.M. Apr. 30, 2020).

[45] ECF No. 44 at 3.

[46] *First Sec. Bank & Trust Co. v. Vander Vegt*, 511 B.R. 567, 585 (N.D. Iowa 2014); *see also, e.g., In re Seven Stars on the Hudson Corp.*, 618 B.R. at 345 ("[Section 1189(b)] asks if the need for an extension is due to *circumstances* beyond the debtor's control.") (alteration in original); *In re Trepetin*, 617 B.R. at 848 (analyzing whether a motion to extend the time for filing should be granted under § 1189) ("Courts and commentators generally have interpreted the language in section 1221 to require that 'the debtor clearly demonstrates that the debtor's inability to file a plan is due to circumstances beyond the debtor's control.") (internal quotation marks and citations omitted); *In re Gul-licksrud*, 2016 Bankr. LEXIS 3546, at *3 (Bankr. W.D. Wis. Sept. 29, 2016) ("An extension [pursuant to § 1221 should be granted only if the debtor 'clearly demonstrates that the debtor's inability to file a plan is due to circum-stances beyond the debtor's control."); *Stock v. Harbicht Research (In re Stock)*, 1994 U.S. App. LEXIS 23896, at *5 (9th Cir. Aug. 29, 1994).

[47] *Justly*, OXFORD ENGLISH DICTIONARY ONLINE, https://premium.oxforddictionaries.com/us/definition/american_english/justly (last visited Dec. 11, 2020).

[48] *Accountable*, OXFORD ENGLISH DICTIONARY ONLINE, https://premium.oxforddictionaries.com/us/definition/american_english/accountable (last visited Dec. 11, 2020).

stances for which Debtor is not fairly responsible or, to borrow from COLLIER, whether Debtor can "clearly demonstrate that the inability to file a plan of reorganization was due to circum- stances beyond [his] control." [49]

### C. Whether Debtor should not justly be held accountable for failing to file a plan by November 23, 2020.

Debtor states that he should not justly be held accountable for failure to file a plan of re- organization by November 23, 2020 and requests a second extension of the filing deadline. [50] Debtor asserts that "in retrospect, the November 23, 2020 date was always insufficient to allow Debtor to file a meaningful substantive plan" [51] because (1) since no bar date for governmental units to file claims was reflected in the 341 Notice, Debtor cannot "meaningfully determine how to provide for" the claims of the State of Louisiana and City of New Orleans where those claims have not been filed [52] and (2) due to the death of his brother, Debtor requires additional time to determine his projected income from his current employer, BRM Concrete, LLC, of which his brother was part owner, and to determine how to utilize or dispose of his 51% ownership in Baker Ready Mix, LLC. [53] Debtor alleges that the recent passing of his brother caused Debtor's time to be consumed by his personal duties at BRM Concrete, LLC, and the operational duties of his brother, interfering with the amount of time he had to dedicate to his bankruptcy case. [54]

Whether a debtor should not justly be held accountable in any given situation is a fact- driven inquiry. If a debtor fails to demonstrate circumstances beyond his control or file a plan by the filing deadline, then cause exists to convert or dismiss the debtor's bankruptcy case. [55] But

---

[49] COLLIER ¶ 1221.01[2].
[50] ECF No. 44.
[51] *Id.* at 2.
[52] *Id.*
[53] *Id.* at 3.
[54] *Id.*
[55] 11 U.S.C. § 1112(b)(4)(F).

because no test exists within the Fifth Circuit or elsewhere that this Court can apply in determining whether the circumstances under which Debtor makes his request meet the stringent "attributable to circumstances for which the debtor should not justly be held accountable" standard, this Court will consider (1) whether the circumstances raised by Debtor were within his control, (2) whether Debtor has made progress in drafting a plan, (3) whether the deficiencies preventing that draft from being filed are reasonably related to the identified circumstances, and (4) whether any party-in-interest has moved to dismiss or convert Debtor's case or otherwise objected to a deadline extension in any way.   These considerations are based on the plain language of § 1189(b) and the discretion that provision confers on courts.[56]

### 1.  Whether the circumstances raised by Debtor were within his control.

#### a.  Governmental Claims Bar Date

Debtor's counsel argued at the December 8, 2020 hearing, ("*Hearing*"), that in his best legal interpretation of subchapter V and as a procedural matter, he advised Debtor that it did not make sense to file a plan where the City of New Orleans and State of Louisiana had not yet filed proofs of claim and the bar date for timely filing had not passed.  Debtor listed three claims from governmental units in his schedules: (1) an unliquidated secured claim by the state of Louisiana in the amount of $381,655; (2) an undisputed unsecured claim by the City of New Orleans with the amount listed as "unknown"; and (3) an undisputed unsecured claim by the state of Louisiana in the amount of $100,000.[57]  Debtor's counsel argued that a plan could have been filed before the governmental unit claim bar date passed, but any filing of a claim after submission of the plan would drastically alter the plan for unsecured creditors.

---

[56] *See* 11 U.S.C. § 1189(b) ("The debtor shall file a plan not later than 90 days after the order for relief under this chapter, except that the court *may* extend the period if the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable.") (emphasis added).
[57] ECF No. 1.

Although the 341 Notice lacked a deadline for the filling of governmental proofs of claim, Bankruptcy Local Rule 3003-1(a) provides that "[i]n . . . chapter 11 cases, unless otherwise ordered by the court or governed by BLR 3003-1(b), proofs of claim and proofs of interest must be filed within 90 days after the first date set for the meeting of creditors under section 341(a), except that a proof of claim filed by a governmental unit must be filed within 180 days after the order for relief."[58]  This case was filed July 7, 2020; therefore, the bar date for the filing of governmental proofs of claim is January 4, 2021.

Debtor's counsel should have realized that the 341 Notice was missing a bar date for governmental unit claims when Debtor's first motion to extend the plan filing deadline was filed on September 15, 2020.[59]  In that motion, Debtor asked to extend the plan filing deadline 14 days beyond the claims bar date that was set for November 9, 2020[60] and even makes explicit reference to the potential claims of the City of New Orleans and the State of Louisiana.[61]  But Debtor's counsel states that he did not notice that the bar date for governmental unit claims was missing from the 341 Notice until he realized that neither the City of New Orleans or the State of Louisiana filed proofs of claim.

Nevertheless, Debtor should not justly be held accountable for the missing bar date that should have been contained in the 341 Notice for governmental claims.  Upon learning that a bar date was not reflected in the 341 Notice for government units, this Court discovered that due to a technological error, the event code used by the United States Trustee to set the 341 Meeting of Creditors did not trigger a bar date for governmental claims for individuals filing under subchapter V.  National Form B309E2 did not provision for the entry of a governmental claims bar date,

---

[58] Bankr. S.D. Tex. R. 3003-1(a).
[59] ECF No. 37.
[60] *Id.* at 3.
[61] *Id.* at 2.

one had to be created to initiate that process.  The error is in no way attributable to the United States Trustee, Debtor, or his counsel.  This Court acknowledges that where a bar date is customarily reflected in a 341 Notice but was lacking due to an internal technological error, such as occurred in the instant case,  even a well-versed bankruptcy attorney could easily overlook the missing date.  This error has now been remedied.

Moreover, although a plan could have been filed before the governmental unit claims bar date passed, Debtor's argument that the missing governmental proofs of claim would drastically change the plan, if one were filed before those proofs were submitted or the bar date passed, is well founded.  The State of Louisiana has a substantial, unliquidated claim in the amount of $381,655 and the City of New Orleans's claim is unknown.  Debtor's counsel explained that the City of New Orleans's claim is unknown because Debtor is aware that he owes some amount in trust fund taxes but has not received an assessment from the City of New Orleans for 2019 or 2020.[62]  Debtor's counsel also explained that Debtor could not estimate the amount of taxes owed based on prior years' assessments because there was a dispute over the taxes owed between Debtor and the City of New Orleans in the past.[63]

Debtor testified that at one point, the City of New Orleans owed him $400,000 in overpaid trust fund taxes and a dispute ensued regarding the City's repayment of that overage.[64] Thereafter, the City claimed that the statutory period for claiming the overpayment had run and Debtor owed the City $200,000 in trust fund taxes.[65]  Currently, the City claims that Debtor owes it money and Debtor claims that the City of New Orleans still owes him a couple thousand dol-

---

[62] December 8, 2020 Hearing at 1:52:00–1:53:28.
[63] *Id.*
[64] *Id.* at 1:55:00–1:59:10.
[65] *Id.*

lars.[66]  Therefore, Debtor is unsure exactly what the City of New Orleans will claim.[67]

Ultimately, both the City of New Orleans and the State of Louisiana claims will not only impact the construction of Debtor's plan, but its feasibility as well.  Although Debtor could have filed a "placeholder plan," such a plan is a skeletal document filed to satisfy a filing deadline, with the intent to file a completed, substantive document later.[68]  There is no legally valid reason to file a placeholder plan in this case.  As the Court explains above, the 90-day plan filing deadline under § 1189 is not jurisdictional and this Court may grant Debtor an extension under the appropriate circumstances; thus, failure to file a plan by the deadline will not mandatorily result in dismissal or conversion.

A placeholder plan is a waste of time and resources for all parties-in-interest and does not represent Congress's intent in enacting the SBRA.  Congress enacted the SBRA to "streamline the bankruptcy process by which small businesses debtors reorganize and rehabilitate their financial affairs."[69]  The purpose of subchapter V is to reduce the barriers and associated costs that prevent small business debtors from successful reorganization, in part by reducing the length of time those debtors spend in bankruptcy.[70]  The intentionally expedited nature of subchapter V cases dictates an abbreviated deadline under § 1189 that is not intended to be manipulated by placeholder plans.  While § 1193 permits a debtor to modify a plan "at any time before confirmation,"[71] or a consensual plan confirmed under § 1191(a) "at any time after confirmation of the

---

[66] *Id.*

[67] *Id.*

[68] *See United States v. Callen*, 2015 U.S. Dist. LEXIS 28861, at *34 (S.D. Tex. Mar. 10, 2015) (quoting *United States v. Jackson*, 2006 U.S. Dist. LEXIS 97072, at *4 (D.S.C. Dec. 8, 2006)) ("A placeholder motion is a skeletal document filed to satisfy the period of limitations, with the intent of filing a real or completed petition at a later date.") (internal quotation marks omitted).

[69] H.R. REP. NO. 116-171 (2019).

[70] *Id.* ("[T]he legislation allows these debtors 'to file bankruptcy in a timely, cost-effective manner, and hopefully allows them to remain in business' which 'not only benefits the owners, but employees, suppliers, customers, and others who rely on that business.'").

[71] 11 U.S.C. § 1193(a).

plan and before substantial consummation of the plan,"[72] and a non-consensual plan confirmed under § 1191(b) "at any time within 3 years, or such longer time not to exceed 5 years,"[73] filing a placeholder plan merely to satisfy the statutory plan filing deadline serves no justiciable purpose, contributes to increased costs, and subverts the intent underlying subchapter V.  Thus, this Court disfavors placeholder plans and expects debtors to file substantive, confirmable plans unless situations arise such that an extension is warranted because of circumstances for which the debtor should not justly be held accountable.[74]

As explained above, Debtor could and should have brought the missing governmental bar date deadline to the Court's attention earlier so that a second extension request could be avoided.  However, Debtor had no control over the technological error itself.  Filing a placeholder plan would not have mitigated the effect of the missing bar date because Debtor would still not have the governmental proofs of claim yet and the plan, along with appropriate financial projections, would require dramatic modification.  Accordingly, this Court finds that because Debtor had no control over the missing governmental bar date that should have been contained within the 341 Notice, other than discovering and reporting it earlier, this factor weighs in favor of granting Debtor's request for additional time to file a plan of reorganization.

### b.  Death of a Sibling

The second intervening event Debtor claims caused him to miss the filing deadline was the passing of his brother.  Debtor testified that his brother passed rather unexpectedly on October 11, 2020, and that in addition to increased duties resulting from the passing, which restricted the amount of time Debtor could dedicate to his bankruptcy case, he was unable to file a plan on November 23, 2020 because he was still considering ways to maximize the value of his 51% in-

---

[72] 11 U.S.C. § 1193(b).
[73] 11 U.S.C. § 1193(c); *see also* SBRA LEGAL MANUAL § 3-17.11.2 (2020).
[74] 11 U.S.C. § 1189(b).

terest in Baker Ready Mix, LLC.[75]

Although the Court is mindful of Debtor's loss, Debtor's testimony at the Hearing and his filed bankruptcy schedules conflict. Debtor's schedules reflect that he has interest in seven different limited liability companies and Debtor valued each of those interests at $0.[76] Thus, Debtor's testimony that the delay in plan filing was due in part to consideration of ways to maximize the value of his interest in Baker Ready Mix LLC, when those interests were valued at $0 is concerning. Debtor also testified that the interests were only scheduled at $0 because that was a bank's valuation of the interests, offset by the debt assessed against Debtor. Since Debtor filed his schedules, Debtor claims that several parties have expressed interest in purchasing certain of his shares, indicating his interest in Baker Ready Mix, LLC is not valueless. According to Debtor's counsel, right now, the best course of action is to auction those shares, but that could change depending on conversations with interested parties.

Debtor's plan was not due until a month a half after his brother passed and Debtor could have been more diligent in determining the best way to maximize the value of his interest in Baker Ready Mix, LLC, particularly in light of Debtor's counsel's acknowledgment that interested parties have been contacting Debtor and his counsel since August. Nonetheless, this Court recognizes the tremendous familial and business responsibilities placed on Debtor due to the passing of his brother and understands how those responsibilities impacted Debtor's ability to sort out the best way to dispose of his shares and file a plan by the November 23, 2020 deadline. Importantly, it is in the best interest of Debtor's creditors that the value of his 51% interest in Baker Ready Mix, LLC, be maximized.

Debtor certainly had no control over the death of his brother and how that impacted his

---

[75] September 8, 2020 Hearing at 2:11:35–2:15:35.
[76] ECF No. 1 at 12.

responsibilities not only with BRM Concrete, LLC, but his statutory duties under 11 U.S.C. § 1189, as well. Accordingly, this Court finds that due to the death of his brother and the influx of responsibilities hoisted on him as a result, this factor weighs in favor granting Debtor's request for additional time to file a plan of reorganization.

### 2. Whether Debtor made progress toward drafting a plan of reorganization.

To further determine whether Debtor should not be held justly accountable for failing to file his plan by the deadline, this Court considers whether Debtor demonstrated that substantial progress was made in drafting the plan and whether the missing pieces of Debtor's plan are reasonably related to the missing governmental claim bar date and the passing of Debtor's brother. At the Hearing, Debtor's counsel informed the Court that a plan had already been drafted. Debtor's counsel disclosed to the Court that the Hancock Whitney Bank claim[77] in terms of allowance and treatment of that claim was "taken care of,"[78] that the domestic support claim held by Tracy Dundas[79] was settled by agreement,[80] that Debtor's 2016 BMW X5[81] will be surrendered,[82] that Debtor analyzed all the proofs of claims on file and intends to file four objections,[83] that Debtor analyzed the claims related to Baker Ready Mix, LLC,[84] and that Debtor decided, for now, the "best course of action to confirm a plan" is to conduct an auction utilizing this Court to obtain the best bid for Debtor's interest in Baker Ready Mix, LLC and provision for those proceeds to be paid to Debtor's creditors.[85] Debtor's counsel indicated that the only two issues not yet dealt with in the plan are: (1) the City of New Orleans's trust fund tax claim and the State of Louisi-

---

[77] ECF No. 1 at 22.
[78] December 8, 2020 Hearing at 1:49:00–1:49:22. See ECF No. 42.
[79] ECF No. 1 at 25.
[80] December 8, 2020 Hearing at 1:49:23–1:49:27.
[81] ECF No. 1 at 66.
[82] December 8, 2020 Hearing at 1:49:27-1:49:29.
[83] *Id.* at 1:49:30–1:49:53.
[84] *Id.* at 1:49:58–1:50:05.
[85] *Id.* at 1:50:06–1:50:25.

ana's tax claim[86] and (2) the best method for disposing of Debtor's interest in Baker Ready Mix, LLC.[87]

The Court is satisfied that Debtor made substantial progress toward the drafting of a plan prior to the Hearing. The only remaining deficiencies are inextricably linked to the intervening events. Accordingly, this Court finds that this factor weighs in favor of granting Debtor additional time to file a plan of reorganization.

### 3. Whether any party-in-interest has filed a motion to dismiss or convert the case or opposed the motion to extend in any other way.

As a final matter, because § 1189 confers discretion on courts to extend a debtor's deadline to file a plan,[88] this Court considers whether any party-in-interest has filed any motion to dismiss Debtor's bankruptcy case or convert that case to a chapter 7 bankruptcy or opposed Debtor's request for an extension in any other way. The Court makes this consideration because unlike in a small business bankruptcy under chapter 11, only the debtor may file a plan in a subchapter V case;[89] thus, the sole method for non-debtor parties to protect their interests when a subchapter V debtor fails to file a plan by the deadline is to ask for dismissal, conversion, or object to a deadline extension.[90] Here, no party-in-interest has filed a motion to dismiss or convert Debtor's case. Likewise, no party-in-interest has raised any objection to permitting a second extension for Debtor to file a plan of reorganization. At the Hearing, only one of Debtor's credi-

---

[86] *Id.* at 1:50:26–1:50:31

[87] *Id.* at 1:50:32–1:50:39, 2:11:35–2:15:35, 2:21:20–2:23:20. Debtor's counsel stated that Debtor is currently planning to dispose of his interest in Baker Ready Mix, LLC by auctioning those shares, but Debtor testified that he is currently entertaining other ways to maximize the value of those interests, as well.

[88] *See* 11 U.S.C. § 1189(b) (". . . except that the court *may* extend the period . . . .") (emphasis added).

[89] *Compare* 11 U.S.C. § 1121(e) (establishing a period of exclusivity for small business debtors to file a plan between 0 and 180 days after the date of the order for relief and allowing any party-in-interest to file a plan after that exclusivity period has run, unless that period is extended), *with* 11 U.S.C. § 1189(a) ("Only the debtor may file a plan under this subchapter.").

[90] *See* 11 U.S.C. § 1181 (excluding 11 U.S.C. § 1104 (Appointment of trustee or examiner) but not excluding 11 U.S.C. § 1112 (Conversion or dismissal)).

tors, Southern Aggregates, LLC, made an appearance.  Southern Aggregates, LLC, did not make any objections or raise any concerns to the potential extension of Debtor's plan filing deadline.

The Subchapter V Trustee, when asked by the Court, indicated that she could not think of any "adverse reaction" an extension of Debtor's plan filing deadline would have on any party-in-interest.  More importantly, the Subchapter V Trustee said that certainty as to what is available and therefore not needing to modify the plan later would be best.  On behalf of herself, and the United States Trustee, the Subchapter V Trustee raised only one concern regarding Debtor's failure to file any operating reports, but those reports were filed the night before the Hearing.[91]  Accordingly, the Court finds that this factor also weighs in favor of granting Debtor additional time to file a plan of reorganization because no party-in-interest has file a motion to dismiss or convert the case or otherwise opposed Debtor's motion requesting additional time to file a plan of reorganization.

### III.   CONCLUSION

The uncertainty as to the City of New Orleans and State of Louisiana claims created a substantial barrier to Debtor's ability to file an appropriately constructed, feasible plan, given that the plan may be provisioned for payments to creditors over a period not to exceed five years.[92]  Additionally, the increase in Debtor's responsibilities resulting from the unexpected passing of his brother stripped Debtor of the time necessary to determine the best way to dispose of his 51% interest in Baker Ready Mix, LLC for the benefit of his creditors and provide his counsel the information needed to complete an appropriate plan.  Finally, Debtor has already made substantial progress in drafting a substantive plan of reorganization and no party-in-interest has filed any motion opposing the relief requested.

---

[91] ECF Nos. 48, 49.
[92] 11 U.S.C. § 1191(c)(2).

Therefore, after careful analysis, this Court finds that the need for an extension to file a plan beyond the November 23, 2020 deadline is attributable to circumstances for which Debtor should not justly be held accountable.[93]   Debtor shall have until December 28, 2020 to file corrective Schedules D and E/F, properly setting forth the amount of debt for each creditor. A separate order establishing the deadline for the filing of governmental proofs of claim as January 4, 2021 was previously issued by this Court.  Debtor shall have until January 18, 2021 to file a plan of reorganization.

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 12/21/2020.

Eduardo V. Rodriguez
United States Bankruptcy Judge

---

[93] 11 U.S.C. § 1189(b).